**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORTEZ JAVAN ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-04815 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF HOBART, INDIANA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cortez Javan Rogers ("Rogers") was a passenger in a car with his fiancée and a friend when Chicago police pulled the car over and began questioning him. Because there was an arrest warrant out for Rogers in Indiana, police arrested him and brought him to the Cook County Jail ("Jail"). The following day, Indiana authorities issued a correction to their warrant information, showing that their intended arrestee—another individual also named Cortez Rogers—had a different middle name and date of birth than the plaintiff here. Rogers was released from the Jail shortly thereafter. He subsequently filed suit in this Court against Defendants City of Hobart, Indiana ("City"), Hobart Police Department ("Department"), and Sergeant Rod Gonzalez for wrongful arrest and incarceration. Rogers alleges that all Defendants committed various torts under Illinois law and that Gonzalez violated his rights under the Fourth Amendment to the United States Constitution. Defendants have moved to dismiss Rogers's claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, in the case of the Department, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) For the reasons stated below, Defendants' motion is granted based on lack of personal jurisdiction.

**BACKGROUND**

Because Defendants seek dismissal based on Rogers's failure to make a *prima facie* showing of personal jurisdiction, the Court accepts as true all of Rogers's well-pleaded facts and resolves any factual disputes in his favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

As alleged, on March 13, 2019, an individual named Nicholas Degard told police in Hobart, Indiana, that several people had recently followed him in a car and threatened him. (Second Am. Compl. ("SAC") ¶ 10, Dkt. No. 21.) Degard had served as an informant in Indiana's investigation of an Illinois resident, Juarez Rogers, for murder. (*Id.* ¶ 31.) Police believed that the suspect's son, Cortez Rogers, also an Illinois resident, was one of the individuals who had threatened Degard. (*Id.* ¶ 18.) On March 25, 2019, Defendant Gonzalez, who was assigned to Degard's case, signed a probable cause affidavit alleging that an individual named "Cortez Rogers," born November 19, 1992, had followed and threatened Degard. (*Id.* ¶¶ 11–14.) Gonzalez also signed an information bringing charges against Rogers. (*Id.* ¶ 23.) Relying on the affidavit and information, a judge in Lake County Superior Court issued an arrest warrant on March 25 for Rogers. (*Id.* ¶ 26.)

At around 12:30 a.m. on April 2, 2019, police in Chicago arrested Rogers during a traffic stop based on the outstanding Indiana warrant and took him to the Jail. (*Id.* ¶¶ 35–36.) Later that morning, a judge in the Circuit Court of Cook County denied Rogers bail. (*Id.* ¶¶ 38–39.) That day, the *Post-Tribune* newspaper of Northwest Indiana ran an article about the charges against Rogers, along with the photograph from his Illinois state identification card, falsely stating that he was the son of murder suspect Juarez Rogers. (*Id.* ¶¶ 31, 52–53.)

On April 3, 2019, the State of Indiana filed a motion to correct its arrest warrant, stating that the correct date of birth for its suspect, "Cortez Rogers," was actually October 23, 2000, and that its suspect had a different middle name than Rogers who is the plaintiff here. (*Id.* ¶ 43). Because of Indiana's correction to the warrant, Rogers was released from the Jail later that evening. (*Id.* ¶ 46.) One week later, on April 10, 2019, a Department police captain called the phone number of one of Rogers's friends in Illinois and left a voicemail intended for Rogers, asking that he return the call. (*Id.* ¶ 55.)

Rogers asserts the following Illinois state-law causes of action against all Defendants: instigation of false imprisonment (Count I); false light (Count II); invasion of privacy (Count III); instigation of false arrest (Count IV); and negligent infliction of emotional distress (Count V). Rogers also asserts a cause of action against Gonzalez under 42 U.S.C. § 1983 for depriving him of his rights under the Fourth Amendment (Count VI).

## DISCUSSION

A Rule 12(b)(2) motion challenges the Court's personal jurisdiction over defendants. Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of showing that such jurisdiction exists. *See Tamburo*, 601 F.3d at 700. "However, when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelab, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations and internal quotation marks omitted). In ruling on a Rule 12(b)(2) motion, the Court accepts as true all well-pleaded facts and resolves factual disputes in favor of the plaintiff. *Tamburo*, 601 F.3d at 700 (citing *Purdue*, 338 F.3d at 782).

A federal district court may exercise personal jurisdiction to the same extent as a state court in the state in which the federal court sits. Fed. R. Civ. P. 4(k)(1)(A). Accordingly, this Court applies the jurisdictional law of Illinois, which allows courts to exercise personal jurisdiction over out-of-state defendants on any basis permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 735 ILCS 5/2-209(c). Therefore, in Illinois, "the state statutory and federal constitutional requirements merge." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Courts may exercise either general or specific personal jurisdiction over a defendant. *Id.* "General jurisdiction looks to the defendant's 'continuous and systematic' contacts with a state, whether or not the action is related to the contacts." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). "The threshold for general jurisdiction is high." *Tamburo*, 601 F.3d at 701. The exercise of general jurisdiction is only appropriate where the defendants' contacts with the forum are so extensive that they are "constructively present in the state," such that it would be fair to bring any claim against them there. *Purdue*, 338 F.3d at 787. Here, Rogers does not argue that Defendants maintain continuous and systematic contacts with Illinois that would permit a finding of general jurisdiction. Accordingly, the Court will focus on whether it may exercise specific jurisdiction.

To exercise specific jurisdiction over Defendants, those Defendants must have sufficient minimum contacts with Illinois such that a suit against them in this state "does not offend traditional notions of fair play and substantial justice." *Brook*, 873 F.3d at 552 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Court must find that Defendants purposefully availed themselves of Illinois contacts and resources, such that they could have reasonably anticipated being haled into court here. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75

(1985). Additionally, Defendants' contacts with Illinois must directly relate to Rogers's claims. *Brook*, 873 F.3d at 552. But the Supreme Court has cautioned that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Instead, due process requires that jurisdiction over a defendant be based on ***his own*** affiliations with the forum, not the "'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King,* 471 U.S. at 475). Therefore, "the inquiry here must focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court ***with respect to this litigation***." *Purdue*, 338 F.3d at 780.

Defendants point to *Walden* to support their argument that Illinois courts cannot exercise specific jurisdiction over them concerning Rogers's claims. In *Walden*, the plaintiff alleged that a defendant police officer wrongfully seized her cash in an airport in Atlanta, Georgia just before she boarded a plane to Las Vegas, Nevada. 571 U.S. at 280. The defendant officer, who resided in Georgia, then submitted a false and misleading probable cause affidavit to the U.S. Attorney's Office in Georgia. *Id.* at 280–81. The Supreme Court rejected the plaintiff's contention that the defendant could be subjected to personal jurisdiction in Nevada based on actions he took entirely in Georgia, even though he knew that the impact of his actions would be felt most strongly in Nevada by a Nevada resident. *Id.* at 288–89. The Court noted that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289. Thus, mere injury to a forum resident was not sufficient to establish personal jurisdiction over the nonresident defendant. *Id.* at 289–90.[1]

---

[1] Rogers contends that in *Walden*, the Supreme Court "re-affirmed its holding in *Calder v. Jones*, 465 U.S. 783 (1984) . . . that jurisdiction lies in a plaintiff's jurisdiction of residency when the plaintiff suffers the effects in-state of a tort directed by an out-of-state actor into the jurisdiction." (Resp. in Opp'n to Mot. to Dismiss at 19, Dkt. No. 28.) In *Calder v. Jones*, the Supreme Court held that a California court could exercise personal jurisdiction over defendant reporters in Florida for libel against a California actress. 465 U.S. 783, 788–89 (1984). The Court emphasized that defendants had relied heavily on "California sources"

5

Defendants' alleged conduct in this case arguably had a closer connection to Illinois than the *Walden* defendant's conduct had to Nevada. In *Walden*, the defendant's actions in Georgia did not incite law enforcement to take any action within the state of Nevada; they simply had a substantial impact upon a Nevada resident. By contrast, here, Rogers alleges that in the course of Gonzalez's employment for the Department and the City, he submitted false materials to obtain an arrest warrant for a person who he knew resided in Illinois. (*See* SAC ¶ 54.) Viewing the allegations in the light most favorable to Rogers, that fact suggests that Gonzalez obtained the warrant with the intent that Illinois law enforcement would arrest Rogers. The SAC does not allege that any Defendant reached out directly to Illinois law enforcement. But Rogers does plead that Defendants obtained a picture of his Illinois identification card, and that his arrest warrant was readily available to Illinois police, who arrested him on a traffic stop only a week after the warrant was issued. (*See id.* ¶¶ 35, 53.)

Nonetheless, since *Walden*, other district courts across the country have held that they lacked personal jurisdiction over law enforcement officials who take actions in another state that lead to a plaintiff's arrest within the forum state. *See, e.g.*, *Skillings v. Crowder*, No. 17-CV-572-JED-JFJ, 2019 WL 1371137, at *5 (N.D. Okla. Mar. 26, 2019) (holding that defendants' actions in Virginia could not justify personal jurisdiction over defendants in Oklahoma "even if they understood that Plaintiff was located in Oklahoma when her arrest warrant was issued"); *Poteat v. Gibson*, Civil No. TDC-17-1903, 2018 WL 6413300, at *3 (D. Md. Dec. 6, 2018) (holding that the "mere request of an arrest warrant in Virginia, the existence of which was observable to Maryland law enforcement officials" could not support a finding of personal jurisdiction over a

---

and that the plaintiff suffered the "brunt of the harm" in that state. *Id.* Contrary to Rogers's claim, as the *Walden* Court explained, "*Calder* made clear that mere injury to a forum resident is ***not*** a sufficient connection to the forum." 571 U.S. at 290 (emphasis provided). Instead, the relevant question is "whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

6

Virginia law enforcement officer in Maryland). And even before *Walden*, "courts nationwide . . . have regularly have [*sic*] rejected assertions of personal jurisdiction against out-of-state law enforcement officials who have merely issued warrants and lodged their warrants in nationwide databases." *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 334–35 (S.D.N.Y. 2013) (collecting cases).

This Court agrees that an out-of-state defendant's issuance of an arrest warrant for a forum resident, by itself, is insufficient to establish personal jurisdiction. An officer using a national database does not purposefully avail himself of the resources of the state in which his suspect is eventually arrested. That officer has not intentionally directed his conduct at any particular forum; he has merely employed an interstate information-sharing system. "[T]o hold otherwise 'would subject law enforcement officers to personal jurisdiction in every state.'" *Id.* at 334. (quoting *Cook v. Holzberger*, 788 F. Supp. 347, 351 (S.D. Ohio 1992)). It is worth noting that the SAC does not allege that Defendants solicited Illinois law enforcement to take any action. Indeed, the SAC fails to make any allegations that Defendants worked with, or even contacted, Illinois officials to secure Rogers's arrest.

Rogers argues that this Court should exercise specific jurisdiction over Defendants because they relied on data collected by Illinois authorities, such as Rogers's state identification card. He cites cases in which courts have asserted personal jurisdiction based on the defendants' remote access of information located on a computer server within the forum state. For instance, in *MacDermid, Inc. v. Deiter*, a court of appeals held that a district court in Connecticut could exercise jurisdiction over a Canadian defendant who had remotely logged onto a server in the state to steal confidential information. 702 F.3d 725, 730–31 (2d Cir. 2012). And in *Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*, a district court held that it had jurisdiction

7

over an out-of-state defendant who had remotely copied copyrighted material from an in-state server. Civil No. H-12-1168, 2013 WL 820589, at *5 (S.D. Tex. Mar. 5, 2013). But unlike the plaintiffs in *MacDermid* and *Rhapsody Solutions*, Rogers does not allege that Defendants logged onto a server located in Illinois, accessed files only available there, or even reached out to Illinois law enforcement to obtain any information. The mere fact that Defendants obtained a picture of Rogers's Illinois identification card is not sufficient to suggest that Defendants had minimum contacts with Illinois.

One case Rogers cites, *Maney v. Ratcliff*, 399 F. Supp. 760 (E.D. Wis. 1975), is closer to the facts alleged in this case, and illustrates the type of conduct by out-of-state law enforcement that might support a finding of personal jurisdiction. In *Maney*, a district court in Wisconsin held that it was proper to exercise personal jurisdiction over Louisiana law enforcement officials who had used a national database to locate a fugitive in Wisconsin and extradite him. *Id.* at 768–69. The court emphasized that in addition to defendants' "continuous solicitation of plaintiff's arrest" on the database, they also made a phone call to Wisconsin police, assured the state's police that they were sending extradition paperwork, and sent a telegram requesting the plaintiff's arrest. *Id.* Here, the facts in the SAC simply indicate that Defendants made Rogers's arrest warrant visible to Illinois law enforcement officials, which constitutes far less contact with the forum state than the defendants had with Wisconsin in *Maney*.

Only Rogers's allegation that a Department police captain tried to reach him by phone on April 10, 2019 suggests that any Defendant ever reached out directly to anyone in Illinois. But a single phone call and voicemail for a forum resident is not sufficient to meet the minimum contacts requirement. *See, e.g.*, *Richardson v. County of Wayne*, No. 08-14248, 2009 WL 2777671, at *4 (E.D. Mich. Aug. 27, 2009) (holding that defendant's phone call and email to a

8

contact in the forum state to confirm plaintiff's identity were not sufficient to establish personal jurisdiction). Moreover, to exercise specific jurisdiction over Defendants on the basis of the April 10 phone call, this Court would need to find that Rogers's injuries "arise out of or relate to" that call. *See Burger King*, 471 U.S. at 472–73 (quoting *Helicopteros Nacionales de Colombia*, 466 U.S. at 414); *Felland v. Clifton*, 682 F.3d 665, 676–77 (7th Cir. 2012) (reversing a dismissal for lack of personal jurisdiction because the defendant's repeated communications to the plaintiff's home in the forum state, intended to "lull[] him into a false sense of security," were directly related to the plaintiff's intentional misrepresentation claim). The circuits have adopted different tests to apply the "arise out of or relate to" element, none of which the Seventh Circuit has officially endorsed. *See Tamburo*, 601 F.3d at 708–09. Some circuits require only that the defendant's conduct within the forum state constitute a "but-for" cause of the plaintiff's injuries; some require that such conduct comprise both a "but-for" cause and a direct proximate cause of the plaintiff's injuries; and one circuit takes a middle-ground approach, instead focusing on whether the defendant engaged in the kind of *quid pro quo* that makes litigation in the forum state reasonably foreseeable. *See id.* (collecting cases).

No matter which test is most appropriate, however, the Court cannot conclude that Rogers's injuries are related to the April 10 voicemail from the Department. All of Rogers's causes of action arise out of his arrest warrant, his arrest, and his incarceration. The Department did not call Rogers until one week ***after*** his April 3 release from the Jail. None of Rogers's claims pertain to Defendants' conduct after his release. Accordingly, the Department's phone call is not sufficient to establish personal jurisdiction over any Defendants.

Because Rogers has not pleaded sufficient facts to establish a *prima facie* case of specific jurisdiction over Defendants, their Rule 12(b)(2) motion to dismiss is granted. Rogers's SAC is

9

dismissed without prejudice. Since this Court has determined that it lacks personal jurisdiction, it declines to consider the merits of the case. *See Sikhs for Justice v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013); *Swaim v. Molton Co.*, 73 F.3d 711, 718 (7th Cir. 1996). Thus, the Court declines to reach Defendants' alternative argument under Rule 12(b)(6) that the Department should be dismissed as a non-suable entity. Additionally, because the Court has dismissed all Defendants for lack of personal jurisdiction, it need not reach Defendants' alternative argument concerning Rogers's failure to state a claim.

## CONCLUSION

The Court grants Defendants' motion to dismiss for lack of personal jurisdiction based on Federal Rule of Civil Procedure 12(b)(2). (Dkt. No. 23.) Rogers's Second Amended Complaint is dismissed without prejudice.

ENTERED:

Dated: September 30, 2020

Andrea R. Wood
United States District Judge